# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| P.G. by and through his mother, K.G., and S.K. by and through his mother, A.K. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 13-3020 |
| JULIE HAMOS, in her official capacity as Director of the Illinois Department of Healthcare and Family Services; MICHELLE R.B. SADDLER, in her official capacity as Secretary of the Department of Human Services; and THE ILLINOIS MENTAL HEALTH COLLABORATIVE FOR ACCESS AND CHOICE, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order (d/e 2) ("Motion"). Because a temporary restraining order is required to prevent irreparable harm until a hearing on the motion for preliminary injunction can be held before this Court, the Motion is GRANTED.

### I. BACKGROUND

On January 30, 2013, Plaintiffs filed a five-count Complaint (d/e 1) against

Defendant, Julie Hamos, in her official capacity as Director of the Illinois Department of Healthcare and Family Services; Defendant Michelle R.B. Saddler in her official capacity as Secretary of the Department of Human Services; and Defendant Illinois Mental Health Collaborative for Access and Choice (Collaborative). Plaintiffs also filed a Motion for Temporary Restraining Order (d/e 2) and a Motion for Preliminary Injunction (d/e 3).

In Count I of the Complaint, Plaintiffs allege, pursuant to 42 U.S.C. § 1983, that Defendants are violating the Early and Periodic Screening, Diagnostic, and Treatment (EPSDT) provisions of the federal Medicaid Act, 42 U.S.C. § 1396 et seq. Specifically, Plaintiffs allege that Defendants have failed to provide Plaintiffs with medically necessary services, including intensive home and community based services, community residential services, and/or residential mental health services, that Defendants are mandated to provide under the EPSDT provisions of the Medicaid Act. Plaintiffs also allege, pursuant to § 1983, that Defendants Hamos and Saddler are in violation of the Americans with Disabilities Act ("ADA") (Count II) and the Rehabilitation Act (Counts III and IV). In Count V, Plaintiff P.G. brings a claim for administrative review alleging that Defendants Saddler's and Collaborative's decision to discontinue funding P.G.'s treatment at Kemmerer Village was not authorized by Illinois law.

According to the Complaint, Plaintiff P.G. is a Medicaid-eligible, 16 year-old boy who suffers from the following conditions: Psychotic Disorder, Not Otherwise Specified; Reactive Attachment Disorder, Inhibitive Type; and Oppositional Defiant Disorder. Compl. ¶ 36. P.G. has been psychiatrically hospitalized numerous times. Comp. ¶ 86. In July 2011, P.G. was accepted into the Individualized Care Grant Program, which provides funding to parents of severely mentally ill children for approved clinical programs at residential placements or at community mental health agencies. Compl. ¶¶ 71, 91. The Individualized Care Grant Program is partially funded through Medicaid and is administered by the Illinois Department of Human Services. Compl. ¶ 72. Defendant Collaborative administers the Individualized Care Grant Program for the Illinois Department of Human Services. Compl. ¶ 74.

In August 2011, P.G. was admitted to Kemmerer Village, a community residential treatment facility in Assumption, Illinois. Compl. ¶ 92. P.G.'s placement is funded by the Individualized Care Grant Program. Compl. ¶ 93. However, in January 2013, Defendant Collaborative refused to authorize funding for P.G.'s placement at Kemmerer Village beyond January 31, 2013. Compl. ¶ 94. If funding is not authorized, P.G. will be discharged. Compl. ¶ 94.

On January 25, 2013, Jonna Tyler, LCPC, recommended that P.G. continue

receiving residential treatment. Compl. ¶ 96. The Complaint further alleges that if P.G. does not receive residential mental health services, he will be at risk for further hospitalization or institutionalization. Compl.¶ 97. When P.G. is hospitalized, he is not able to attend school or leave the hospital. Compl. ¶ 98. Outpatient services have been unsuccessful at maintaining a sufficiently supervised and therapeutic setting for P.G.. Compl. ¶ 99.

Plaintiff A.K. is an 11 year-old boy suffering from the following conditions: Mood Disorder, Not Otherwise Specified; Anxiety Disorder, Not Otherwise Specified; ADHD, combined type, Oppositional Defiant Disorder; Learning Disorder, Not Otherwise Specified; and Reactive Attachment Disorder. Compl. ¶ 39. A.K. has been psychiatrically hospitalized seven (7) times. Compl. ¶ 105. At the hearing on the Motion, counsel for Plaintiffs indicated that A.K. is currently hospitalized at Methodist Medical Center in Peoria, Illinois. See also Motion ¶ 18 (A.K. is residing in a Methodist Medical Center, a psychiatric hospital, since January 8, 2013).

On January 22, 2013, Dr. Leah Perez recommended that A.K. receive residential treatment. Compl. ¶ 107. The Complaint alleges that if A.K. does not receive residential mental health services, he will be at risk for further hospitalization. Compl. ¶ 108. When A.K. is in the hospital, he is unable to attend

school or leave the hospital. Compl. ¶ 109. Furthermore, outpatient services have been unsuccessful at maintaining a sufficiently supervised therapeutic setting for A.K. Compl. ¶ 110. The Complaint alleges that both Plaintiffs need a residential treatment setting or facility for the maximum reduction of their mental disability and for restoration to the best possible functional level because sufficient intensive home and community based-services have not been made available to them. Compl. ¶¶ 101, 111.

In the instant Motion, Plaintiffs seek a temporary restraining order enjoining Defendants from failing to take immediate and affirmative steps to arrange and fund Plaintiffs' medically necessary residential treatment as required under the EPSDT provisions of the Medicaid Act. On January 31, 2012, this Court held a telephone hearing on the Motion with counsel for Plaintiff, attorney Michelle N. Schneiderheinze, and counsel for Defendants, Deborah Barnes. At the conclusion of arguments, the Court orally granted the Motion. The Court now sets forth the decision in further detail.

## II. JURISDICTION AND VENUE

Federal subject matter jurisdiction over Counts I through IV exists pursuant to 28 U.S.C. § 1331, as each count asserts a claim that arises under federal law. The Court has supplemental jurisdiction over Count V, the state law claim. 28

U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) (a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred).

### III. ANALYSIS

Plaintiffs request the Court to enter a temporary restraining order, enjoining Defendants from failing to take immediate and affirmative steps to arrange and fund Plaintiffs' medically necessary residential treatment as required by the EPSDT provisions of the Medicaid Act. See 42. U.S.C. § 1396 et seq.

To obtain a temporary restraining order, the movant must show that: (1) he is reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) he will suffer irreparable harm that, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. See Joelner v. Vill. of Washington Park, Illinois, 378 F.3d 613, 619 (7th Cir. 2004) (stating requisite elements for a preliminary injunction); Goodman v. Illinois Dep't of Fin. and Prof'l Regulation, 430 F.3d 432, 437 (7th Cir. 2005) (stating that a movant bears the burden of proof). "If the movant can meet this threshold burden, then the inquiry becomes a 'sliding scale' analysis where these factors are weighed against one another." Joelner, 378 F.3d at 619. "The more likely the plaintiff is to win, the less heavily need the

balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." Roland Machinery Co. v. Dresser Industries Inc., 749 F.2d 380, 387 (7th Cir. 1984).

Here, all the factors weigh in favor of granting a temporary restraining order.

### 1. *Likelihood of Success on the Merits*

In the Motion, Plaintiffs requests that this Court enter a temporary restraining order enjoining Defendants from failing to take immediate and affirmative steps to arrange and fund Plaintiffs' medically necessary residential treatment as required under the EPSDT provisions of the Medicaid Act. The injunctive relief that Plaintiffs seek in the Motion relies predominately on the claim stated in Count I.

In Count I, Plaintiffs allege, pursuant to 42 U.S.C. § 1983, that Defendants are in violation of the EPSDT provisions of the federal Medicaid Act because Defendants have failed to provide Plaintiffs with medically necessary intensive home and community based services, community residential services, and/or residential mental health services when such services are medically necessary to treat or ameliorate their conditions. Therefore, the Court's analysis of the likelihood of success on the merits for the purpose of the Motion will be limited to Count I. Specifically, this Court must determine whether Plaintiffs are likely to

succeed on their claim that Illinois is required to provide Plaintiffs with coverage for placement in a residential treatment facility under the EPSDT provisions of the Medicaid Act.

"Medicaid is a cooperative federal-state program that provides federal funding for state medical services to the poor." Frew v. Hawkins, 124 S.Ct. 899, 901 (2004). State participation is voluntary; however, once a state has chosen to participate, as Illinois has, it must comply with all federal requirements. Id. One requirement is that every participating State must have "early and periodic screening, diagnostic, and treatment services" (EPSDT services) for persons under age 21. See 42 U.S.C. § 1396d(a)(4)(B).

EPSDT services include certain screening, vision, dental, and hearing services (see 42 U.S.C. §§ 1396d(r)(1)-(4)), as well as "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in [§ 1396d(a) ] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5).

The Seventh Circuit has interpreted the Medicaid Act to mean that placement in a psychiatric residential treatment facility, where such placement is determined to be medically necessary through EPSDT screening, is included

"within the ambit of covered EPSDT services." Collins v. Hamilton, 349 F.3d 371, 374-75 (7th Cir. 2003). In Collins, the plaintiffs filed a class action complaint against the State of Indiana alleging that Indiana had violated the Medicaid Act by failing to provide medically necessary residential psychiatric treatment for Medicaid-eligible children under the age of 21. Id. at 372. The district court entered a permanent injunction requiring Indiana to provide Medicaid-eligible children under the age of 21 with psychiatric residential treatment facility placements where the placement was found to be medically necessary by EPSDT screenings. Id. The Seventh Circuit affirmed the district court, holding that Indiana's denial of any funding for placement in psychiatric residential treatment facilities to children when deemed medically necessary by EPSDT screening violated the Medicaid Act. Id. at 376.

In reaching this conclusion, the Collins court interpreted the EPSDT provisions of the Medicaid Act. First, the court noted that, within the scope of EPSDT services for children, states are required to furnish "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." Collins, 349 F.3d at 374

(citing 42 U.S.C. § 1396d(r)(5)).

The court next noted that under § 1396d(a)(16), "inpatient psychiatric hospital services for individuals under age 21" are coverable Medicaid expenses so long as they abide by the directives of subsection (h). Collins, 349 F.3d at 374. The court found that the language in § 1396d(h) "broadens the definition of 'inpatient psychiatric hospitals' to include the services rendered in [psychiatric residential treatment facilities] by expressly incorporating other inpatient settings as specified by the Secretary in the promulgated regulations." Collins, 349 F.3d at 374-75 (citing § 1396d(h)(1)(A)). The court then noted that the Secretary has promulgated regulations "that specifically include [psychiatric residential treatment facilities] as possible venues for patients under the age of 21 to receive psychiatric treatment." Collins, 349 F.3d at 375 (citing 42 C.F.R. § 441.151(b) ("Inpatient psychiatric services furnished in a psychiatric residential treatment facility as defined in § 483.352 of this chapter, must satisfy all requirements in subpart G of part 483 of this chapter governing the use of restraint and seclusion.")). The court noted that § 483.352 elaborates on this requirement by defining a "Psychiatric Residential Treatment Facility" as "a facility other than a hospital, that provides psychiatric services [. . .] to individuals under age 21, in an inpatient setting." Collins, 349 F.3d at 375 (citing 42 C.F.R. § 483.352). The court concluded:

"Under the language in the Act and the provisions in the regulations, we find that [psychiatric residential treatment facilities] qualify as 'inpatient psychiatric hospitals,' and therefore placement in a [psychiatric residential treatment facility] is included within the ambit of covered EPSDT services." Collins, 349 F.3d at 375.

Here, Plaintiffs seek relief very similar to the relief the plaintiffs sought in Collins. Plaintiffs have alleged that they are Medicaid-eligible persons under the age of 21 and that placement in a residential treatment facility is medically necessary. Plaintiffs also allege that (1) Collaborative has refused to authorize funding for P.G.'s placement at Kemmerer Village beyond January 31, 2013; and (2) Dr. Leah Perez has recommended that A.K., who is currently hospitalized, receive residential treatment. Considering these facts and the decision in Collins, this Court concludes that Plaintiffs have shown a strong likelihood of success on the merits of Count I.

2.   *No Adequate Remedy at Law*

Plaintiffs have also sufficiently shown that no adequate remedy at law would suffice. Plaintiffs are requesting declaratory and injunctive relief to require Defendants to provide certain medically necessary services. Plaintiffs allege that if a temporary restraining order does not issue and Plaintiffs return home, Plaintiffs

will be at risk for further hospitalizations and that outpatient services have been unsuccessful at maintaining a supervised and therapeutic setting.  Under these circumstances, a subsequent legal remedy, delivered weeks or months later, will not adequately address Plaintiffs' current needs absent temporary injunctive relief.

### 3.     *Irreparable Harm*

Plaintiffs have also sufficiently shown that, if Defendants are not enjoined, Plaintiffs will sustain substantial, irreparable harm that outweighs the harm that Defendants will suffer if the temporary restraining order is granted.  See Joelner, 378 F.3d at 619.

At the January 31, 2013 hearing, Plaintiffs' counsel stated that P.G. is scheduled to be discharged from Kemmerer at 5:30 p.m. on January 31, 2013 because Collaborative has refused to authorize funding for P.G.'s placement at Kemmerer Village beyond that date.  A.K. is currently hospitalized, but Dr. Leah Perez has recommended residential treatment for A.K.   Plaintiffs assert that without a temporary restraining order, they will be forced to spend an enormous amount of time in the more restrictive psychiatric hospital to receive services to treat their emotional, behavioral, and developmental disorders.  Moreover, if Plaintiffs return home, they will face ongoing risk to their emotional and behavioral health because sufficient intensive home and community-based services

have not been made available to them.  See Compl. ¶¶ 101, 111.

Plaintiffs cite the Seventh Circuit decision in Collins, 349 F.3d at 376, in which the court stated: "There is a distinction between the acute care available in a psychiatric hospital setting and the less restrictive treatment provided by a residential facility."  Plaintiffs explain that psychiatric hospitals are locked facilities while residential treatment facilities are not.  Plaintiffs also state that children cannot attend school or other community events while at a psychiatric hospital, but they can attend such events while at a residential treatment center.

Plaintiffs further assert that spending prolonged time in a hospital in order to receive treatment would lead to unjustified isolation that is prohibited under the ADA, 42 U.S.C. § 12132.  Plaintiffs cite to Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 600-01 (1999), in which the Supreme Court stated that "confinement in an institution severely diminishes the everyday activities of individuals including family relations, social contacts, work options, economic dependence, educational advancement, and cultural enrichment."

Based on the facts alleged in the Complaint and the Motion, Plaintiffs have sufficiently shown irreparable harm if a temporary restraining order is not granted.  Moreover, Defendants will not suffer substantial harm by ensuring P.G. stays in a residential treatment facility until a hearing is held on Plaintiffs' pending Motion

for Preliminary Injunction.

The Court notes defense counsel's concerns that Eleventh Amendment immunity bars the Court from ordering state officials to conform their conduct with state law.  See <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 121 (1984) (holding that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment").  However, a carefully crafted temporary restraining order remains necessary to prevent a violation of the EPSTD provisions of the Medicaid Act.  Therefore, the irreparable harm that Plaintiffs would suffer if no temporary restraining order is issued outweighs the harm that Defendants will suffer if the temporary restraining order is granted.

### *4.     Public Interest*

The court further finds that issuing a temporary restraining order in this case will not harm the public interest.  Ordering the State of Illinois to provide Plaintiffs with medical treatment that the State is required to provide under the EPSTD provisions of the Medicaid Act will not harm the public interest.

In sum, a temporary restraining order is required to prevent irreparable harm until a hearing on the motion for preliminary injunction can be held.

### IV.  CONCLUSION

Accordingly, the Court GRANTS Plaintiffs' Motion (d/e 2) and ORDERS as follows:

1. Defendants are ordered to take immediate and affirmative steps to arrange and fund Plaintiffs' medically necessary treatment as required by the EPSDT provisions of the Medicaid Act beginning January 31, 2013 until the restraints of this Order dissolve: (1) for P.G., this includes maintaining P.G.'s placement at Kemmerer Village and, if necessary, signing a new contract with Kemmerer Village and arranging funding for P.G.'s continued placement at Kemmerer Village; (2) for A.K., this includes maintaining A.K.'s placement at Methodist Medical Center, continuing to seek a residential treatment facility, and arranging funding for placement in a residential treatment facility.

2. A hearing on Plaintiffs' Motion for Preliminary Injunction is set for February 15, 2013 at 10:00 a.m.  This Order's restraints shall dissolve at the close of that hearing, unless extended before that date and time.

If Defendants fail to comply with the terms of this Opinion, Defendants will be in contempt of this Court and subject to sanctions.

IT IS SO ORDERED.

ENTER: January 31, 2013

FOR THE COURT:

                                                s/ Sue E. Myerscough
                                        SUE E. MYERSCOUGH
                                 UNITED STATES DISTRICT JUDGE