# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| P.G., by and through his mother, K.G.; A.K., by and through his mother, S.K.; M.L., by and through his mother, V.L.; T.K., by and through her mother, L.S.; T.W., by and through her mother, M.R., A.F., by and through her parents S.F. and M.F.; B.A., by and through her legal guardian, J.A.; Sa.F., by and through her mother J.F.; and C.S., | |
| Plaintiffs, | |
| v. | No. 13-3020 |
| JULIE HAMOS, in her official capacity as Director of the Illinois Department of Healthcare and Family Services; MICHELLE R.B. SADDLER, in her official capacity as Secretary of the Department of Human Services; and THE ILLINOIS MENTAL HEALTH COLLABORATIVE FOR ACCESS AND CHOICE, | |
| Defendants. | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Motion to Dismiss filed by Defendant The Illinois Mental Health Collaborative For Access and Choice (the Collaborative) (d/e 41).  The Motion is GRANTED IN PART and DENIED IN PART.  Plaintiffs A.K., by and through his mother, S.K; M.L., by and through his mother, V.L.; T.K., by and through her mother, L.S.; T.W., by and through her mother, M.R.; A.F., by and through her parents S.F. and M.F.; B.A., by and through her legal guardian, J.A.; and Sa.F., by and through her mother J.F., concede that they have failed to state a claim against the Collaborative.  Therefore, those claims are dismissed.  However, Plaintiff P.G., by and through his mother K.G., and Plaintiff C.S. have sufficiently demonstrated, at this stage of the litigation, standing to bring their claims against the Collaborative.  The motion to dismiss the claims brought by P.G. and C.S. is denied.

## I.  FACTS ALLEGED IN THE COMPLAINT

Because Plaintiffs have conceded that Plaintiffs A.K., M.L., T.K., T.W., A.F., B.A., and Sa.F. failed to state a claim against the

Collaborative, the Court will only recite the factual allegations relating to P.G. and C.S.'s claims against the Collaborative.

Plaintiffs P.G. and C.S. are Medicaid-eligible children (under age 21) with mental health disorders who allege they are not being provided with the treatment required by federal law. Plaintiffs filed suit against Julie Hamos in her official capacity as Director of the Illinois Department of Healthcare and Family Services; Michelle R.B. Saddler in her official capacity as Secretary of the Illinois Department of Human Services; and the Collaborative.

The Illinois Department of Human Services administers the Individual Care Grant Program, which is partially funded through Medicaid. Second Am. Compl. ¶ 87. The Individual Care Grant Program provides funding to parents of severely mentally ill children for approved clinical programs at residential placements or at community mental health agencies. Id. ¶ 86.

The Collaborative is an administrative services organization that oversees services and resources allocated to the Department of Human Services. Second Am. Compl. ¶ 64. Specifically, the Collaborative

provides "outsourced administrative functions" to the Department of Human Services for the Division of Mental Health's Individual Care Grant Program. Second Am. Compl. ¶¶ 88-89.

On April 1, 2009, the Collaborative assumed responsibility for the community-based Individual Care Grant Program. Second Am. Compl. ¶ ¶ 94; see also ¶ 92 (as of April 1, 2009, residential and community-based services were processed through the Collaborative's billing system). However, beginning in fiscal year 2012, Individual Care Grant providers submitted all claims to the Department of Healthcare and Family Services for processing. Id. ¶ 95. Only Plaintiffs P.G. and C.S. have been accepted into the Individual Care Grant Program. Id. ¶¶ 112, 199.

Plaintiff P.G. is a Medicaid-eligible, 16 year-old boy who suffers from the following conditions: Psychotic Disorder, Not Otherwise Specified; Reactive Attachment Disorder, Inhibitive Type; and Oppositional Defiant Disorder. Second Am. Compl., ¶ 106. In July 2011, P.G. was accepted into the Individual Care Grant Program. Id. ¶ 112.

In August 2011, P.G. was admitted to Kemmerer Village, a community residential treatment facility in Assumption, Illinois.  Id. ¶ 113.  P.G.'s placement was funded by the Individual Care Grant Program.  Id. ¶ 114.  In January 2013, the Collaborative refused to authorize funding for P.G.'s placement at Kemmerer Village beyond January 31, 2013.  Id. ¶ 115.  On January 25, 2013, Jonna Tyler, a licensed clinical professional counselor, recommended that P.G. continue receiving residential treatment.  Id. ¶ 117.

Plaintiff C.S. is a 19-year-old male diagnosed with Attention Deficit Hyperactivity Disorder, Combined Type; Bipolar Disorder, most recently with a Manic Episode with psychotic feature; and a history of Mild Mental Retardation.  Id. ¶ 197.  C.S. was accepted into the Individual Care Grant Program.  Id. ¶ 199.  In August 2012, the services C.S. received through the Individual Care Grant Program were abruptly terminated.  Id. ¶ 200.  C.S. attempted to appeal the termination of his Individual Care Grant services but he never received a response to his appeal.  Id. ¶ 201.  On March 15, 2013, Andrew Kim, M.D., recommended that C.S. receive residential treatment.  Id. ¶ 202.

Counts I, V, and VI of the Second Amended Complaint are directed at the Collaborative. Count I alleges pursuant to 42 U.S.C. § 1983 that Defendants are violating the Early and Periodic Screening, Diagnostic, and Treatment (EPSDT) provisions of the Medicaid Act, 42 U.S.C. § 1396 et seq. Specifically, Plaintiffs allege that Defendants have failed to provide Plaintiffs with medically necessary services, including intensive home and community-based services, community residential services, and/or residential mental health services that Defendants are mandated to provide under the EPSDT provisions of the Medicaid Act.

In Count V, Plaintiffs P.G. and C.S. bring a claim titled "Administrative Review—Improper Promulgation of Rule" against Defendants Saddler and the Collaborative. Plaintiff P.G. alleges that the Collaborative's decision to deny P.G. funding for his placement at Kemmerer Village is a final administrative decision affecting P.G.'s rights. Second Am. Compl. ¶ 258. Similarly, Plaintiff C.S. alleges that the Collaborative's decision to abruptly terminate C.S.'s Individual Care Grant program benefits is a final decision affecting C.S.'s rights. Id. ¶ 259.

Plaintiffs P.G. and C.S. further allege, on information and belief, that the Collaborative used criteria other than those specified in 59 Ill. Admin. Code § 135.20 in deciding to deny Plaintiffs P.G. and C.S. further funding through the Individual Care Grant Program. Id. ¶ 260. They claim the Collaborative's decision to deny Plaintiffs P.G. and C.S. additional funding was made in reliance on criteria adopted by Defendants in violation of the Illinois Administrative Procedures Act. Id. ¶ 261. Moreover, according to P.G. and C.S., the decision by Saddler and the Collaborative to discontinue funding of P.G.'s and C.S's treatment was not authorized by Illinois law. Id. ¶ 262.

In Count VI, Plaintiffs P.G. and C.S. bring a claim pursuant to § 1983 against Defendants Saddler and the Collaborative. Plaintiffs P.G. and C.S. allege that as Medicaid recipients, they have a constitutional right to due process if their requests for Medicaid services are denied, reduced, terminated, or suspended. Id. ¶ 264. Plaintiff P.G. alleges that the Collaborative's decision to deny P.G. funding for his placement at Kemmerer Village was not made in writing and that Plaintiff P.G. was not given an opportunity for a fair hearing or an appeal to challenge the

decision. Id. ¶ 266. Plaintiff C.S. alleges he was not given an opportunity for a fair hearing or an appeal to challenge the Collaborative's decision to deny him funding through the Individual Care Grant program. Id. ¶ 267.

Plaintiffs P.G. and C.S. seek the following relief: (1) a declaratory judgment in favor of Plaintiffs declaring that the Defendants' failure to comply with the mandates of the Medicaid Act is unlawful; (2) a permanent injunction enjoining Defendants from subjecting Plaintiffs to practices that violate their rights under the Medicaid Act; (3) costs, including reasonable attorney's fees; and (4) such other relief as the Court deems just and appropriate.

## II. PROCEDURAL BACKGROUND

In January 2013, after the filing of the original Complaint, the Court granted Plaintiff P.G.'s Motion for Temporary Restraining Order and ordered Defendants to take immediate and affirmative steps to arrange and fund Plaintiff P.G.'s medically necessary treatment, including maintaining P.G.'s placement and Kemmerer Village. See Opinion (d/e 6). The Court scheduled a hearing on P.G.'s Motion for Preliminary

Injunction. In March 2013, Plaintiff C.S. filed a Motion for Temporary Restraining Order and a Motion for Preliminary Injunction.

In May 2013, the parties filed a Joint Status Report to the Court. <u>See</u> d/e 38. The Report indicated that Plaintiffs' counsel was withdrawing the motions requesting emergency relief on behalf of P.G. and C.S. in light of recent changes to the Individual Care Grant Program that might allow P.G. and C.S. to obtain the needed residential treatment. Plaintiffs' counsel sought to withdraw the motions without prejudice to refiling them if the Individual Care Grant fails to meet P.G.'s and C.S.'s needs.

In August 2013, the Collaborative filed a Motion to Dismiss the Second Amended Complaint on two grounds. First, the Collaborative argues that the claims of Plaintiffs A.K., M.L., T.K., T.W., A.F., B.A., and Sa.F. against the Collaborative must be dismissed for failure to state a claim because those Plaintiffs have no connection with the Individual Care Grant Program. Plaintiffs concede that Plaintiffs A.K., M.L., T.K., T.W., A.F., B.A., and Sa.F. have failed to allege a cause of action against

the Collaborative. Therefore, the claims brought by Plaintiffs A.K., M.L, T.K., T.W., A.F., B.A., and Sa.F. against the Collaborative are dismissed.

Second, the Collaborative argues that Plaintiffs P.G. and C.S. lack standing to sue the Collaborative and that the claims against the Collaborative should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). The Collaborative argues that Plaintiffs P.G. and C.S. cannot show that they suffered injuries that are fairly traceable to action by the Collaborative or that their injuries are likely to be redressed by a favorable court decision. Plaintiffs P.G. and C.S. respond that they have standing to sue the Collaborative because they have suffered injuries that are directly traceable to the Collaborative's failure to properly perform its duties.

### III. LEGAL STANDARD

The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing standing. Scanlan v. Eisenberg, 669 F.3d 838, 841 (7th Cir. 2012). The elements necessary to establish standing are (1) an injury in fact; (2) an injury that is fairly traceable to the challenged conduct of the defendant; and (3) a likelihood that the injury

will be redressed by a favorable decision.  <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-181 (2000).

When reviewing a motion to dismiss for lack of standing, the court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.  <u>Scanlan</u>, 669 F.3d at 841.  A court may, however, look outside the complaint's allegations and consider other evidence submitted by the parties to determine whether a plaintiff has standing.  <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975).  Moreover, when the defendant produces evidence that raises a doubt about the plaintiff's standing, the plaintiff must come forward with competent proof that standing exists.  <u>Apex Digital, Inc. v. Sears, Roebuck & Co.</u>, 572 F.3d 440, 444 (7th Cir. 2009)(distinguishing between facial and factual challenges to standing).

## IV.  ANALYSIS

In the Motion to Dismiss, the Collaborative challenges whether Plaintiffs can show the second and third requirements for standing: whether the injury is fairly traceable to action by the Collaborative and whether any injury to P.G. or C.S. is likely to be redressed by a favorable

decision. Specifically, the Collaborative argues that any injury suffered by Plaintiff P.G. and C.S. is not fairly traceable to action by the Collaborative. Collaborative asserts that it had no control over final decisions made by the Individual Care Grant Program, the Department of Mental Health, or the funds distributed to providers or children in the Individual Care Grant Program. Without such control, the Collaborative contends Plaintiffs cannot trace their injury back to the Collaborative.

The Collaborative further argues that Plaintiffs P.G. and C.S. cannot demonstrate that their injury is redressable. The Collaborative asserts that because it lacks the authority to make binding decisions about a child's eligibility for Individual Care Grants, any injunctive relief granted by the Court would not redress Plaintiffs' alleged injuries.

In support thereof, the Collaborative has submitted the Affidavit of Scott Permentier, the Chief Executive Officer/Service Center Vice President of ValueOptions, Inc. d/b/a The Illinois Mental Health Collaborative for Access and Choice. Aff. ¶ 1. Mr. Permentier states that in December 2007, Illinois contracted with the Collaborative to provide

administrative services to the Illinois Department of Mental Health Individual Care Grant Program.  Aff. ¶ 3.

Mr. Permentier asserts that, pursuant to the Contract, the Collaborative reviewed provider records and parent/guardian submitted documentation and made funding recommendations to the Individual Care Grant office regarding initial or continued Individual Care Grant eligibility for juveniles.  Aff. ¶ 4.  Funding recommendations made by the Collaborative were not binding.  Aff. ¶ 6.  The Collaborative did not pay Individual Care Grant providers and did not provide benefits to juveniles in the Individual Care Grant Program.  Aff. ¶ 7.  The Collaborative was not the custodian of any funds used to pay benefits under Illinois Care Grant Program.  Aff. ¶ 8.  The Collaborative did not own the network of Individual Care Grant providers and was not involved in the process of selecting providers or contracting with providers.  Aff. ¶ 9.  According to Mr. Permentier, all claims submitted to the Individual Care Grant Program were adjudicated through the Illinois Department of Health and Human Services.  Aff. ¶ 10.  The Collaborative did not participate in the adjudication of Individual Care Grant claims.  Aff. ¶ 10.

Mr. Permentier further states that the Collaborative did not make decisions regarding the level of care but only made "funding recommendations" based on the Illinois Department of Mental Health Individual Care Grant Medical Necessity Criteria. Aff. ¶ 11. The Department of Mental Health established all policies and procedures for the Individual Care Grant provider community. Aff. ¶ 12. The Collaborative applied such policies and procedures as directed by the Department of Mental Health. Aff. ¶ 12. According to Mr. Permentier, the Collaborative neither created nor changed the policies and procedures of the Individual Care Grant. Aff. ¶ 12. Mr. Permentier further asserts that the Collaborative did not enforce the provisions of the Individual Care Grant Program found in 59 Ill. Admin. Code § 135. Aff. ¶ 13.

In contrast to the Collaborative's evidence, Plaintiffs point to evidence that shows that the Collaborative had extensive decision-making authority within the Individual Care Grant Program. See "Individual Care Grant Program Change in Level of Care Appeal Review Process Psychiatrist Review of Appeal" (Exhibit D, d/e 43-4) and the "Individual Care Grant Residential Treatment and Community-Based Provider

Handbook" (Exhibit E, d/e 43-5).  According to the documents submitted by Plaintiffs, the Collaborative monitored youths' progress in treatment by participating in "quarterly staffings," authorized residential services, assisted with transition to community services and/or discharge planning, applied policies and procedures as directed by the Department of Mental Health, and made decisions to change individuals' level of care.  See Response, p. 7-10, citing Exhibits D and E.

To meet the "causation" requirement for standing, Plaintiffs P.G. and C.S. must show that their injury is fairly traceable to action taken by the Collaborative.  See Bennett v. Spear, 520 U.S. 154, 168 (1997).  However, the Collaborative's action does not have to be the last step in the chain of causation.  See id.  It is sufficient that Plaintiffs P.G. and C.S. demonstrate that the Collaborative's actions necessarily caused a third party to injure them.  Id. (holding that while an injury is not fairly traceable if it is the result of independent action of a third party not before the court, "that does not exclude injury produced by determinative or coercive effect upon the action of someone else") (citations and additional quotations omitted); see also B.J. v. Homewood

<u>Flossmoor CHSD #233</u>, --- F.Supp.2d ---, 2013 WL 6182906, at *3 (N.D. Ill. Nov. 26, 2013) (noting that the "traceability and redressability prongs of the standing analysis are problematic when a third party must act in order for an injury to arise or be redressed, or when an independent decision precludes relief to a plaintiff" but finding the allegations in the complaint sufficient to support standing).

At this stage of the litigation, Plaintiffs P.G. and C.S. have sufficiently demonstrated they have suffered an injury fairly traceable to the Collaborative's actions.  Plaintiffs have presented evidence that the Collaborative had extensive decision-making authority regarding the Individual Care Grant Program.  Plaintiffs have also alleged that the Collaborative made the decision to deny them funding under the Individual Care Grant Program.  Plaintiffs P.G. and C.S. allege that they have not been given the opportunity to appeal that decision, thereby making the Collaborative's decision the final decision.

Further, because Plaintiffs P.G. and C.S. have demonstrated an injury fairly traceable to the Collaborative's actions, they have also demonstrated a likelihood that the injury will be redressed by a favorable

decision.  Plaintiffs seek a declaration that the Defendants' failures to comply with the mandates of the Medicaid Act are unlawful.  Plaintiffs also seek an order enjoining Defendants from subjecting them to practices that violate their rights under the Medicaid Act.  Such relief would redress Plaintiffs P.G.'s and C.S.'s injuries.

The Court recognizes the existing factual disputes and the Court's authority to hold an evidentiary hearing.  See, e.g., Apex, 572 F.3d at 444-45 (noting the district court's authority to hold an evidentiary hearing and noting that once the defendant came forward with evidence that plaintiff lacked standing, the plaintiff had to come forward with competent proof of standing).  However, the disputed factual issues would be better addressed after the parties have had the opportunity to conduct discovery.  See, e.g., Access 4 All, Inc. v. Chicago Grande, Inc., 2007 WL 1438167 (N.D. Ill. May 10, 2007) (denying motion to dismiss with leave to raise the standing issue after discovery).

Therefore, the Collaborative's Motion to Dismiss the claims brought by Plaintiffs P.G. and C.S. is DENIED without prejudice to raise

the standing issue after jurisdictional discovery is complete.  The Collaborative may also request an evidentiary hearing.

## V.  CONCLUSION

For the reasons stated, the Collaborative's Motion to Dismiss (d/e 41) is GRANTED IN PART and DENIED IN THE PART.  The claims against the Collaborative brought by Plaintiffs A.K., by and through his mother, S.K; M.L., by and through his mother, V.L.; T.K., by and through her mother, L.S.; T.W., by and through her mother, M.R., A.F., by and through her parents S.F. and M.F.; B.A., by and through her legal guardian, J.A.; and Sa.F., by and through her mother J.F., are DISMISSED for failure to state a claim.  Plaintiffs P.G., by and through his mother, K.G., and C.S. have, for purposes of the Motion to Dismiss, adequately demonstrated that they have standing to bring their claims against the Collaborative.  The Collaborative shall file an Answer to the Second Amended Complaint on or before February 7, 2014.

ENTER: January 24, 2014

FOR THE COURT:

                                                  s/ Sue E. Myerscough
                                           SUE E. MYERSCOUGH
                                           UNITED STATES DISTRICT JUDGE